FILED

2017 APR 14 PM 12: 25

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

FORT MYERS

2:17-CV-204-FtM-99CM

PLAINTIFF

JOSEPH VERRIER

V.

DEFENDANTS

MICHELLE RENO

ROBYNE WEHLE

BRADLEY ROUSKEY

JURISDICTION

1. Plaintif Joseph Verrier lives at 5278 Barrow Drive, St James City, Florida, 33956 of Lee County Florida

2. Defendants Supervisor Michele Reno, officer Robyn Wehle and deputy administrator Bradley Rouskey all work for Florida Department of Corrections and are located at 2295 Victoria Ave, Suite 173, Fort Myers Florida, 33901 of Lee County Florida. Plaintiff wishes to include the entity of the Florida Department of Correctins as a defendant in the event other agents are appointed.

3. Plaintif is filing under 42 US code section 1983 and originating in the United States District Court. All parties are located in Lee County Florida.

4. Plaintiff is asserting the defendants are violating the Equal protection clause of the United states constitution. In addition, plaintiff claims defendants are failing to provide due process the the plaintiff as well as abusing their discretionary authority. All these acts are being done under the color of law. Plaintiff is filing as a class os one.

5. Plaintiff is also challenging Florida statutes and the way in which defendants are applying said statutes is Unconstitutionally vague as well as overly broad in unnecessarily restricting plaintiff First Amendment rights under the United States Constitution.

6. The court has jurisdiction to issue declaratory relief pursuant to the federal declaratory judgement act under 28 USC section 2201.

7. Defendants are the appointed probation supervisors of plaintiff by the Florida department of corrections. Both plaintiffs residence and where the claims arose ( 28 USC section 1391) and the defendants place of employment are in Lee County Florida.

8. 42 USC section 1983 does not impose a state of mind requirement independent of the underlying basis for liability. There must only be a causal connection between defendants actions and harm done to plaintiff.

9. A law may be attacked as unconstitutionally vague when an ordinary citizen does not know what the law requires. Connally v,. General Const. 269 US 385, 391 (1926)

10. Plaintiff alleges defendants and defacto Florida Department of corrections are treating plaintiff differently than a similarly situated in state Florida probationer. Plaintiff further alleges defendants are failing to follow Florida statutes and internal Florida DOC policies with regards to the plaintiff.

FACTS

11. Plaintiff is a resident of the state of Florida.

12. Plaintiff is on probation through the Federal interstate compact from Wisconsin being supervised by Florida deparment of corrections.

13. Plaintiff has two court orders from Wisconsin. One order permits limited access to the internet. The other order requires agent approval to access the internet. Wisconsin rules also state agent approval is necessary.

14. Plaintifs date of offense is March of 2014.

15. Florida has no statutes imposing restrictions on internet use for a similary situated Florida parolee with plaintiff date of offense.

16. Officer Wehle and Supervisor Reno refused to grant approval for internet access as of November 2016, even though Dr. Rodger Gunder had previously approved such usage. Defendants required a new approval from a new provider.

17. Florida agents have no authority to impose rules or sanctions on plaintiff that would not apply to a similarly situated in state parole.

18. Florida places the sole authority on regulating and approving internet usage in the hands of a qualified therapist for offenders with an offense date after July 2005. State statute 948.30 (1) h

19. Wisconsin rules require agent approval for various activities such as driving and owning a vehicle as well as maintaining dating relationships in addition to the internet permission. Plaintiff has never received permission to drive or date, yet has done so with Florida agents fully aware of him doing so. The Florida Attorney General is on the

record as saying those are Wisconsin rules, we are Florida agents. We would not grant approval for those rules.

20. In October of 2016 plaintiff completed a treatment program as an alternative to being revoked. At that time there were no modifications to his probation rules.

21. In November of 2016 defendant Wehle ordered plaintiff to disable his email account including those used by others in his business. There is no rule in either state requiring such an action to be done by plaintiff. Plaintiff has ongoing litigation with Florida DOC and the plaintiff has emails regarding that litigation. In addition plaintiffs emails contain medical, legal, as well as photographs of his children and other correspondence.

22. In December of 2016 an email to the Florida Attorney general Ken Wilson. The email was signed as having been sent on behalf of plaintiff.

23. In or about February 2017 defendant Wehle searched plaintiffs residence and vehicle and found no contraband computer devices. Plaintiff explained he had not accessed the internet.

24. On March 8, 2017 defendant Reno informed plaintiff Florida reported a violation to Wisconsin and that Florida would refuse to permit internet access to plaintiff for the remainder of her probation while in Florida.

25. Florida statutes only permit a judge to modify a probationers terms of probation after a hearing and a finding of a willful and substantial violation of parole. Florida statute 948.06 case clark v state 579 so. 2d. 109. FLA. 1991 supreme court

Florida statute 949.07 holds Florida to the terms and conditions of the interstate compact, thus making it the law of Florida. As a resident of Florida plaintiff is subject to Florida's laws. It further states in ARTICLE XIV

<div style="text-align:center">BINDING EFFECT OF<br>COMPACT AND OTHER LAWS</div>

(1) OTHER LAWS.—

(a) Nothing in this compact prevents the enforcement of any other law of a compacting state which is not inconsistent with this compact.

(b) Any law of a compacting state which conflicts with this compact is superseded to the extent of the conflict.

26. Rule 4.101 of the compact states a receiving state shall supervise an offender transferred under the interstate compact in a manner determined by the receiving state and consistent with the supervision of other similar offenders sentenced in the receiving state.

27. ICOTS opinion 3-2008 states compact offenders should be subject to the same exceptions as offenders sentenced in the receiving state.

28. ICOTS rule 4.103 states " the receiving state may impose a special condition on an offender transferred under the interstate compact if that special condition would have been imposed on the offender if sentence had been imposed in the receiving state.

29. Rule 4.109 ( c ) 2 regarding violation reports of the compact states "the response by the sending state shall include action to be taken by the sending state and the date by which that action will begin and its estimated completion date"

30. The procedures of the interstate compact as well as internal Florida DOC procedure 301.001 (17) e 3a stipulate that "the violation will be reported to the court or commission in the appropriate manner based on the type of violation and recommendation of the officer in the other state. E.g. technical violation notification letter, alternative sanctions program or violation report.

31. Florida DOC policy 301.001 (22) (b) 8-9 states "the sending state will submit a response tto the violation report no later than 10 days. The response will include action to be taken by the sending state and the date by which that action will begin and its estimated completion date."

32. Florida policy 301.001 (25) c states if a Florida officer imposes a sanction it must comply with the interstate compact, be provided to plaintiff in writing on the "Florida Standard conditions of supervision form. This was not done.

33. Plaintiff has an MBA, and has degrees in finance and accounting. Currently plaintiffs operates a landscaping business. Plaintiff is unsure whether he is permitted to have other people advertise his business online, whether others can do banking, access investment accounts, order products, or send correspondence to lawyers, doctors or family members on plaintiff behalf, online.

34. On March 8, 2017 plaintiff requested documents from his DOC case file as part of litigation against Florida DOC. Defendant Reno immediately advised plaintiff he had lied by not disabling his email account and that she would seek additional violations against plaintiff. Potentially jepardizing plaintiffs probation.

35. Plaintiff has learned that Florida probation and defendants petitioned Wisconsin DOC to retake plaintiff after defendants reported the "alleged" violation of having an email sent on plaintifs behalf by a third party and not disabling his email account.

36. In February 2017 plaintiff in writing asked defendant Reno to access the internet for valid purposes of work, school, advertising his business, communicating with councilors, lawyers, family member, to do legal research. Defendant Reno responded in writing zero access would be approved.

37. The Wisconsin rule states "you shall not gain or attempt to gain access to the internet without prior agent approval."

38. The Florida statute which applies to offenes occuring after July 2005 ( state statute 948.30 (1) h )states "there is a prohibition on accessing the internet or other computer services until a qualified practitioner ...approves and implements a safety plan"

39. On March 24, 2017 defendant Reno told plaintiff he had 30 days to disable his email account or be violated.  Plaintiff was to do this over the phone and provide proof of having done so.  This order was not a condition from Wisconsin and is not a standard rule of Florida.  This order was given orally.

40. There is no means by which an email account can be disabled by calling Google that plaintiff has found.

41. Disabling the email account effectively destroys documents contained within the account such as photographs, medical records, legal documents, correspondence relevant to the suit plaintiff has against Florida DOC, as well as personal correspondence.  These items are personal intellectual property of the plaintiffs.

42. On March 24, 2017 defendant Reno pointed to the document plaintiff signed to transfer to Florida.  That document indicated additional rules could be imposed by the receiving state. Defendant Reno indicated that document meant Florida could imposs any rules it wanted to on plaintiff.  She questioned plaintiff on this fact.  When he disagreed and said he was following all the rules, however, it was his belief Florida could only impose rules which would be impossed upon a similarly situated Florida probationer, defendant Reno said she would inform Wisconsin plaintiff was no longer agreeing to the terms of the interstate contract.

43. On March 24, 2017 defendant Reno had plaintiff sign a document indicating "Florida will apply the condition of no contact with any electronic devices of any kind that can access the internet or any form of social media. No access of any kind for the remainder of supervision while in Florida"

44. Internal Florida DOC policies require a sanction to be given on a standard rules of Florida supervision form, this was not done.

45. On a March 29, 2017 phone call with plaintiffs Wisconsin agent he was advised not to have emails sent with his signature attached. Plaintiff was not ordered to disable his email account.

46. Defendant Reno and Officer Wehle also are imposing GPS monitoring on plaintiff while the Florida statue pertaining to GPS monitoring relevant to plaintiff date of offense requires a court order. There is no court order imposing GPS on plaintiff. Plaintiffs offenses were with females above the age of 15.

47. Several complaints were sent to both defendant Reno and defendant Rouskey. Per Florida DOC policies they should have responded by mail. As of the filing of this complaint no such responses have been received.

48. Defendant Rouskey is the direct supervisor of supervisor Reno. A complaint was sent to Defendant Rouskey regarding the order to destroy plaintiffs email account. as of the filing of this complaint no response was received. Presumably the actions of defendant Reno were authorized by defendant Rouskey.

**Claim 1 Plaintiff Claims he has been treated differently than a similarly situated Florida parolee in violation of the United States Equal Protection Clause.**

49.     A Florida parolee with plaintiffs date of offence would be given approval to use the internet. Florida statutes no not restrict internet access to similarly situated Florida parolees. Just as plaintiff was not required to seek approval to drive a vehicle or to enter into dating relationships while in Florida, he should have been allowed to access the internet. The stipulation he seek agent approval was done by plaintiff. The defendants failed to provide approval for reasonable valid usage of the internet in keeping with case law quidlines. Furthermore, an email sent on plaintiffs behalf to the Florida Attorney general regarding litigation with Florida DOC hardly meets the standard of a significant, willful violation of the rules of supervision. Even if the defendants were lawfully able to impose such a sanction, which plaintiff disputes, the sanction would be unreasonable and unnecessarily punitive and restrictive of First Amendment rights.

50. A Florida parolee is afforded a hearing and only the court may impose a modification to parole conditions in Florida ( state statute 948.06) Clark V. State 579 So. 2d 109 Fla. 1991 supreme court. Furthermore the court must find the violation to be significant and willful. It is the sending that that is to implement any sanctions to preserve due process with judicial oversight and recourse. Defendants do not have the authority to impose a sanction on plaintiff and the manner in which they did so failed to comply with both their internal procedures as well as Florida law. Plaintiff was denied this oversight.

51. State statute 948.30 (2) (e) electronic monitoring when deemed necessary by the probation officer and his supervisor and ordered by the court"

52. As there is no court order requiring electronic monitoring of plaintiff, he is being treated unlike a similarly situated Florida parollee and thus defendants are violating Florida law, Florida DOC policy, as well as the UNITED STATES equal protection clause.

53. The order my defendant Reno that plaintiff disable his email account is neither a standard rule of Florida nor Wisconsin. Nor did Wisconsin authorize such. Defendant Reno had no authority to make such an order, thus forcing plaintiff to destroy property.

## CLAIM 2  Defendants are abusing their discretionary authority by imposing a sanction as well as denying plaintiff due process rights.

54. As codified by Florida law, the Interstate compact requires that only the sending state may apply sanctions upon a parolee. Interstate compact rule 4.109 ( c) (2) "the response by the sending state shall include action to be taken by the sending state and the date by which that action will begin and its estimated completion date.

55. Florida law codifies and makes state law the conditions of the interstate compact, thus Florida DOC agents are statutorily compelled to follow those rules. To violate those rules would violate plaintiffs equal protection as well as due process rights. Plaintiff makes no claim to any rights directly under the compact itself. However, as the state of Florida has implemented those conditions as part of Florida state law through the statutory process, plaintiff makes claim that his equal protection and due process rights under Florida law have been violated thus violating his US Constitutional rights to equal protection and due process.

56. Florida DOC procedure Florida DOC policy 301.001 (22) (b) 8-9 states "the sending state will submit a response to the violation report no later than 10 days. The response will include action to be taken by the sending state and the date by which that action will begin and its estimated completion date. Florida policy 301.001 (25) c states if a Florida officer imposes a sanction it must comply with the interstate compact, be provided to

plaintiff in writing on the "Florida Standard conditions of supervision form. This was not done.

57. Plaintiff argues that Florida DOC policy 301.001 (25) c was violated because the sanction imposed by Florida DOC could not be imposed by Florida DOC on a similarly situated Florida parole. Only a Florida court could do so, there is no statutory requirement internet access be denied by Florida DOC. Furthermore, no such sanction would be found on the "Florida Standard conditions of supervision form."

58. Defendants did not properly report the sanction on the Florida Standard conditions of supervision form as required by their own internal procedures. This plaintiff alleges is because no such standard sanction is found on that form and no such sanction could be imposed by defendants on a similarly situated parolee sentenced within Florida, thus violating plaintiffs equal protection rights and due process rights.

59. Plaintiff further argues that the intent of the interstate compact, as well as Florida DOC policy 301.001 (22) is to place the discretionary sanction in the sending state where there is judicial oversight.  By Florida DOC imposing a sanction as they did, they have denied plaintiff of both his due process rights under Florida law, as well as under Wisconsin law.

60. The order my defendant Reno that plaintiff disable his email account is neither a standard rule of Florida nor Wisconsin. Nor did Wisconsin authorize such. Defendant Reno had no authority to make such an order, thus forcing plaintiff to destroy property.

## CLAIM 3   as interpreted by defendants the Wisconsin and Florida rules regarding accessing the internet are unconstitutionally

vague as well as unnecessarily restrictive of First Amendment rights.

61. Plaintiff was given a sanction by Florida even though he did not directly access the internet.

62. As interpreted by defendants the Wisconsin rule and Florida rule imposed on plaintiff were and are unreasonably vague. Can the defendant have a third party business, a business partner, or a family member post or create advertisements for plaintiffs business online? Can a family member send a message or correspondence on plaintiffs behalf on the internet? Can a family member register plaintiff for seminars, classes or activities online? Can a family member buy products for plaintiff online? Can they access plaintiffs banking records and investments online and act on plaintiffs behalf? What exactly is "accessing the internet"? This is far to vague a statement.

63. The internet is an essential element of modern society. Numerous First Amendment rights, Rights of association are associated with the internet. Business advertising, purchase of numerous products are only available online, the ability to pursue any college level or technical level educational opportunity, banking, investing, plaintiffs ability to access the federal courts, to access legal research. All of these fundamental activities are dependent on accessing the internet and becoming more so each day. A blanket restriction on accessing the internet effectively sets the plaintiff up for failure and in fact puts the public at greater risk by doing so. Would not the public be better served by a parole working at an office job with his computer use monitored as opposed to serving hundreds of residences throughout the community?

64. Plaintiff claims that a reasonable person would not know what is and what is not permitted by the rule as applied by defendants. What is "accessing the internet"

65. Plaintiff further argues that interpretation of the rule by defendants is unnecessarily overly restrictive of plaintiffs first Amendment rights.

66. The 11th circuit court held that when a court orders a restriction on internet access by permission from agent, this restriction is only viable if the agent provides permission to the parolee for valid uses of the internet.  US V ZINN 321 F3d 1084 2003

67. That defendants are not only preventing plaintiff direct access to the internet completely, but also denying indirect access through a third party vastly restricts plaintiffs First Amendment rights beyond what are reasonable.

68. Plaintiff has an MBA, runs a business and has had to turn away work and educational activities due to the excessive restrictions imposed by the defendants.

## CLAIM 4  Retaliation Claim against supervisor Reno

69. Immediately after plaintiff asked to review his DOC files and immediately after expressing his point of view regarding his current suit against Florida DOC defendant Reno threatened to report noncompliance of plaintiff to Wisconsin.   Defendant Reno at this time also gave what plaintiff claims to be an illegal order in a non-standard way to plaintiff, ordering the destruction of plaintiffs intellectual property without authorization of statute or court order.  Plaintiff engaged in a protected activity, i.e. expressing a belief, as well as seeking government documents, and was proximally harmed.

70. Immediately after Wisconsin denied Floridas request to retake plaintiff, defendants imposed a sanction upon plaintiff that they could not lawfully impose on a similarly situated Florida parole.

71. Defendants believe they can impose any rule and any restriction on plaintiff and when plaintiff expresses an alternate opinion or challenges the assertion in court, defendants seek to find ways to send plaintiff back to Wisconsin.

72. The proximal timing of these events is enough to support a claim of retaliation. Dawson V. Entek International (9th Circuit 2011)  F 3d 928, 932-33

## RELIEF SOUGHT

73. Per Equal Protection Clause , Declaratory and injunctive relief compelling Florida DOC to treat plaintiff as they would a similarly situated Florida parolee. Ordering a discontinuation of electronic monitoring without a court order. Removing any sanction imposed upon plaintiff by Florida DOC which would not be imposed upon a similarly situated Florida parolee by Florida DOC without a court order.  Compelling that any discretionary rule sent by Wisconsin and not applied to a similarly situated Florida parolee shall be granted to plaintiff.

74. Declaratory and Injunctive relief finding that as applied by defendants the rule prohibiting "accessing the internet" is both overly vague and unnecessarily restrictive of plaintiffs First Amendment rights and rights of association. As no Florida court, nor a Florida Statute restricts access to a similarly situated parolee, Florida DOC should not have restricted plaintiffs access nor should they be now.  Nor was the alleged violation willful or substantial and the actions taken by Florida DOC unlawfully denied plaintiff due process, and were excessive, if not retaliatory in nature.

75. Declaratory and Injunctive relief that defendant Reno had no authority to compel plaintiff to destroy his email account and thus substantial intellectual property.

76. Monetary award for defendant Reno's compelling the distraction of plaintiffs personal property.

77. Monetary award for retaliation on the part of defendant Reno.

Signed


Joseph Verrier, plaintiff